**FILED**

DEC 19 2012
12-19-12
Magistrate Judge Sidney I. Schenkier
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**UNDER SEAL**

15

UNITED STATES OF AMERICA

v.

DAVID LEWISBEY

CRIMINAL COMPLAINT

CASE NUMBER: **12CR0989**

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief:

From on or about April 22, 2012 to on or about April 23, 2012, at Chicago, in the Northern District of Illinois, Eastern Division DAVID LEWISBEY defendant herein:

> not being a licensed importer, manufacturer, or dealer, wilfully engaged in the business of dealing in firearms, and in the course of such business, transported, and received firearms in interstate and foreign commerce;

in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

I further state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives, and that this complaint is based on the facts contained in the Affidavit which is attached hereto and incorporated herein.

Signature of Complainant
RAMIRO MONTES
Task Force Officer, Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to before me and subscribed in my presence,

December 19, 2012                                    at    Chicago, Illinois
Date                                                        City and State

SIDNEY I. SCHENKIER, U.S. Magistrate Judge
Name & Title of Judicial Officer                            Signature of Judicial Officer

**STATE OF ILLINOIS**         )
                              ) SS
**COUNTY OF COOK**            )

## AFFIDAVIT

I, Ramiro Montes, being duly sworn, state as follows:

### BACKGROUND OF AFFIANT

1. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since approximately 2010. As part of my regular duties as a Task Force Officer, I investigate criminal violations of the federal firearms laws, including Title 18, United States Code, Sections 922 and 924, as well as federal narcotics laws, including Title 21, United States Code, Sections 841(a)(1) and 846. I have received training regarding, among other things, violations of federal firearms laws and narcotics laws at the Federal Law Enforcement Training Center.

### BASIS OF AFFIDAVIT

2. This Affidavit is based on my personal knowledge, as well as on information obtained from other federal and local law enforcement personnel. This affidavit also contains information that was provided by cooperating sources and obtained during recorded calls, meetings, and undercover operations.

3. The recitation of facts contained in this affidavit is not meant to be a complete narrative of all that has occurred in connection with this investigation, but is only a summary of facts necessary to show probable cause that David LEWISBEY, not being a licensed importer, manufacturer, or dealer, did unlawfully engage in the business of dealing in firearms, and in the course of such business, transported, and received firearms in

1

interstate and foreign commerce, in violation of Title 18, United States Code, Sections 922(a)(1)(A), 924(n) and 2.

4. Because of the limited purpose of this affidavit, I have not included all of the facts known to me or other law enforcement officers about the investigation. Some of the summaries of conversations may not include references to all the topics covered during the course of the conversations. In addition, the summaries may not necessarily include references to all statements made by the speakers on the topics that are mentioned. Quotations included in the affidavit are based on preliminary, not final, transcriptions of the recorded conversations.

## INVESTIGATION

5. On April 22, 2012 and April 23, 2012, Levaine Tanksley[1] conducted five separate firearm transactions with a CS[2] in which he sold the CS a total of 43 firearms. Four of these transactions took place on April 22, 2012 between 12:38p.m. and 7:26p.m. The fifth transaction took place on April 23, 2012 at approximately 2:09p.m. During each transaction, agents equipped CS with an audio and video recording device. Agents also searched CS and his/her vehicle and found no firearms on CS's car or person. Agents then followed the CS to the location of the controlled purchases and monitored the controlled purchases in real time. After each controlled purchase the CS was followed

---

[1] Levaine Tanksley was charged by criminal complaint on May 9, 2012 in case number 12 CR 354. Tanksley was later indicted on May 30, 2012, and charged with seven counts of being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). A superseding indictment was filed on August 22, 2012, adding two additional defendants. The five firearm transactions listed in this affidavit were the basis for five of the seven counts in the Tanksley indictment. Each of these transactions are set forth in detail in the Tanksley criminal complaint affidavit. The Tanksley complaint affidavit is incorporated as though set forth fully herein.

[2] The CS is being paid for his/her cooperation. The CS has two prior felony narcotics convictions. Agents believe the CS to be reliable because information he/she has provided in the past has been confirmed in other investigations. In addition, information provided by the CS during this investigation has been corroborated during the recorded phone calls and meetings set forth herein.

back to a meet location where the firearms he purchased were immediately recovered by law enforcement.

6. As described below, many, if not all, of the firearms sold to the CS by Tanksley were originally acquired by LEWISBEY, who during the April 22 and April 23, 2012 time period travelled from Chicago, Illinois to Crown Point, Indiana and Indianapolis, Indiana to acquire the firearms and transport them back to Chicago, Illinois, before Tanksley brokered the sale of the firearms to the CS.

### a. First Gun Deal

7. On April 22nd, 2012, at approximately 12:38 p.m., the CS met with Levaine Tanksley as part of an ATF controlled purchase of firearms. The controlled transaction occurred in front of a residence located at the 6800 block of South Langley, Chicago, Illinois (the "Langley residence"). During this controlled purchase, the CS purchased three firearms from Tanksley in exchange for $2,300. At the conclusion of this transaction, Tanksley offered to sell the CS additional firearms later that same day. The CS was then followed by agents to the predetermined meet location and provided the agents with the three firearms he purchased from Tanksley. The firearms Tanksley provided to the CS included:

  a. Glock Inc., model 37, .45 caliber pistol, bearing serial number LNH179;
  b. Glock Inc., model 37, .45 caliber pistol, bearing serial number KZH569;
  c. Glock Inc., model 37, .45 caliber pistol, bearing serial number KZH659.

8. During the first gun deal transaction outlined above, law enforcement observed a Blue Chrysler Town & Country Minivan bearing Wisconsin License 616TFM parked in front of the Langley residence (the "LEWISBEY van"). Law enforcement observed an unidentified occupant exit the LEWISBEY van and enter the Langley residence.

3

According to database queries, Wisconsin license plate 616 TFM is leased by EAN Holdings, LLC, also known as Enterprise Rental Car. According to the rental records obtained from Enterprise Rental Car pursuant to subpoena, the van bearing license plate 616 TFM was rented by David LEWISBEY from April 20, 2012 to April 24, 2012. At the time of the rental, LEWISBEY provided Enterprise with a valid Illinois driver's license identifying him as LEWISBEY. In addition, LEWISBEY listed his home address as 17320 Sterling Court, South Holland, Illinois 60473. LEWISBEY also provided Enterprise with telephone numbers 312-671-2358 ("LEWISBEY Phone 1") and 708-692-2358 ("LEWISBEY Phone 2") as his contact phone numbers.

9. Cell site data was obtained by a court order for LEWISBEY Phone 1 revealed that immediately prior to the First Gun Deal, LEWISBEY's phone traveled from Chicago, Illinois to Crown Point, Indiana, and then on to Indianapolis, Indiana, returning to Chicago prior to the First Gun Deal. At 12:41p.m., around the time of the First Gun Deal, cell site information put LEWISBEY's cell phone in the area of the Langley residence.

10. According to public advertisements and interviews of gun vendors present at the show, there was a gun show in Crown Point, Indiana on April 21, 2012 and April 22, 2012.

11. An ATF gun trace revealed that all three firearms sold during this transaction were originally purchased by the Indiana partnership of Individuals A and B.[3] As detailed below in paragraphs 23-31, Individuals A and B are gun dealers in Indiana who acknowledged selling LEWISBEY a total of approximately thirty firearms at gun shows and in private sales in Indianapolis, Indiana in March and April 2012.

---

[3] Individual A and Individual B purchased firearms for their business in their own names, as well as in the names of their wives and children. Gun traces referenced in this Affidavit identifying it as a gun purchased by Individual A or Individual B were purchased by either them or a member of their immediate family for sale by the partnership.

### b. Second Gun Deal

12. On April 22, 2012, the CS again spoke to Tanksley in a consensually monitored phone call and agreed to purchase five firearms in exchange for $5,700. At approximately 1:23 p.m., the CS returned to the Langley residence to meet Tanksley. According to the CS, he/she saw Tanksley exit the Langsley residence. According to a review of the recording, Tanksley entered CS's vehicle. According to CS, Tanksley then handed CS four firearms. Because Tanksley only produced four guns, instead of the five previously negotiated, the CS agreed to pay Tanksley only $5,300. According to CS, and confirmed by a review of the recording, CS in fact handed Tanksley $5,300 in prerecorded funds. Before concluding this transaction, and according to a review of the recording, Tanksley stated his guys are "coming back with another order . . . 30 more." Based on my training and experience, I understood Tanksley to be saying that his suppliers would be back with more firearms shortly. CS agreed to purchase additional firearms if/when they were available. The firearms Tanksley provided to the CS included:

   a. FNH USA Model Five Seven 5.7 x28 caliber pistol, bearing serial number 386108414
   b. FNH USA Model Five Seven 5.7 x 28 caliber pistol, bearing serial number 386229544;
   c. Glock, model 22, .40 caliber pistol, bearing serial number BCU921US;
   d. Velocity Firearms, model VMAC 9, 9 mm pistol, bearing serial number PV109014.

13. The FNH USA pistol bearing serial number 386229544 was identified by Individual B as being sold to LEWISBEY in March or April 2012.

14. A review of the cell site information obtained by court order for LEWISBEY Phone 1 revealed that on April 22, 2012, at 1:40p.m., around the time of the Second Gun Deal, cell site information put LEWISBEY's cell phone in the area of the Second Gun Deal.

c. **Third Gun Deal**

15. On April 22, 2012, at approximately 2:30 p.m., CS placed a monitored and recorded telephone call to Tanksley. According to a review of the recording, during the call, Tanksley directed CS to meet Tanksley in a Chinatown parking lot in order to purchase four firearms for $2,200. When CS arrived at the parking lot, according to a review of the recording, Tanksley entered CS's vehicle holding a handgun box and a plastic bag. In exchange for $2,200 that agents previously provided to CS, Tanksley provided the CS with four firearms. According to a review of the recording, prior to exiting CS's vehicle, Tanksley said that he'll have "25 more (guns) in four hours." Tanksley also said, "You got to come to a room and see what you want. Give me $5,000 and you can put your order in then." Tanksley further stated, "I'll get you whatever, give me a list." The firearms Tanksley provided to the CS included:

   a. Taurus International, Model PT738, .380 caliber pistol, bearing serial number 03328C;
   b. Kel-Tec Model P11, 9mm pistol bearing serial number 24169;
   c. Taurus International, Model PT140, .40 caliber pistol bearing serial number SCO27417; and
   d. Smith & Wesson, Model SW9VE, 9mm pistol bearing serial number PBU4906.

16. An ATF firearms trace report further revealed that the Taurus model PT738 pistol bearing serial number 03328C was previously purchased by the partnership of Individuals A and B.

17. According to cell site records obtained by a court order, while Tanksley was conducting the third gun sale on April 22 in which he stated that he would have "25 more (guns) in four hours," LEWISBEY'S cell phone was again travelling from Chicago to Crown Point, Indiana, near the location of the Crown Point gun show, arriving in Crown Point at

approximately 2:30p.m. and remaining in Crown Point until approximately 4:54 p.m. before returning to the Chicago area that evening.

### d. Fourth Gun Deal

18. Later on the same day, in a series of recorded calls, Tanksley agreed to sell the CS an additional nine firearms for $7,500. The CS agreed to meet Tanksley at the Langley Address. At approximately 7:26 p.m., agents followed CS as he/she drove to Langley address. Once there, outside the Langley residence, agents again observed the LEWISBEY van present at the time of this controlled buy. Tanksley and an individual later identified as Charles Lemle[4] entered the CS's vehicle and exchanged a total of nine (9) firearms for $7,500 from the CS. Both Tanksley and Lemle are depicted on the video recording that was affixed to CS's vehicle. Tanksley informed the CS that he would be able to sell him/her additional firearms the following day. The firearms Tanksley provided to the CS included:

a. Fratelli Tanfoglio, model TA90, 9 mm pistol, bearing serial number G10736;
b. A.A. Arms Inc., Model AR9, 9mm pistol bearing serial number 200185;
c. Taurus International, Model PT101AF, .40 caliber pistol bearing serial number SNE78979;
d. Taurus International, Model PT111, 9mm pistol bearing serial number TRH48249;
e. Kahr Arms, Model CW45, .45 caliber pistol bearing serial number SD0053;
f. Springfield Armory, Model XD45, .45 ACP caliber pistol bearing serial number US589719;
g. Kel-tec Model PF-9 9mm pistol bearing serial number RA943;
h. Glock Inc., Model 35, .40 caliber pistol bearing serial number LPN816; and
i. Springfield Armory, Model XD45, .45 ACP caliber pistol bearing serial number XD614889.

After the transaction was complete, the CS observed the LEWISBEY van immediately leave the area.

---

[4] Charles Lemle was charged by criminal complaint on July 10, 2012, in case number 12-CR-508. Lemle was later charged in the superseding indictment in case number 12 CR 354, along with Tanksley and Michael Hall. Lemle is charged with one count of being a convicted felon in possession of a firearm based on his sale of firearms to the CS on April 22, 2012.

### e. Fifth Gun Deal

19. On April 23, 2012, in a series of recorded telephone calls, Tanksley agreed to sell the CS an additional twenty-three firearms in exchange for $20,000. During one of the recorded calls, Tanksley stated, "they (the gun suppliers) coming in . . . I'm waiting on update, but they called and said to get your ready." At 2:09p.m., Tanksley directed CS to Chinatown. The CS met with Tanksley and an individual later identified as Michael HALL[5] in Chinatown to purchase additional firearms. In total, twenty-three firearms were purchased by the CS from Tanksley and Hall. The firearms Tanksley provided to the CS included:

a. Khar, model CW45, .45 caliber pistol, serial number SE2393;
b. Astra, model Constable II, 9 mm pistol, serial number F4982;
c. Taurus, model PT140 Pro, 40 caliber pistol, serial number SAR03526;
d. Remington, model 870, 12 gauge shotgun, serial number GAUD491758M;
e. Glock, model 19, 9 mm pistol, serial number CFT670US;
f. Beretta, model 3032 Tomcat, .32 caliber pistol, serial number DAA486239;
g. Smith and Wesson, model 38 Special, .38 caliber pistol, serial number CDC86627;
h. Mauser-Werke, model unknown, caliber unknown, serial number 0118006;
i. Springfield Arms, model XD-9, 9 mm pistol, serial number XD160053;
j. Ruger, model SR9C, 9 mm pistol, serial number 332-58107;
k. Ruger, model SR9C, 9 mm pistol, serial number 332-53874;
l. FNH, model FNP-9, 9 mm pistol, serial number 61BNM02497;
m. Beretta, model 32 Tomcat, .32 caliber pistol, serial number DAA421440;
n. Taurus, model Millennium PT-111, 9 mm pistol, serial number TAW59939;
o. Laseraim, model Series III, .45 caliber pistol, serial number G00480;
p. Taurus, model 357 Magnum, .357 caliber revolver, serial number YB61712;
q. Ruger, model SR9C, 9 mm pistol, serial number 33257934;
r. Ruger, model 380 Auto LCP, .380 caliber pistol, serial number 370-06041;
s. Kareen, model MKIII, 9 mm pistol, serial number 96JO1431;
t. Kahr, model P40, .40 caliber pistol, serial number Z00733;
u. Beretta, model 84F, 9 mm pistol, serial number E08736Y;
v. Springfield, model XP45, .45 caliber pistol, serial number US698854;

---

[5] Michael Hall was charged by criminal complaint on July 9, 2012, in case number 12-CR-505. Hall was later charged in the superseding indictment in case number 12 CR 354, along with Tanksley and Lemle. Hall is charged with one count of being a convicted felon in possession of a firearm based on his sale of firearms to the CS on April 23, 2012.

8

w. Kel-Tec, model P32, .32 caliber pistol, serial number CWK00.

20. ATF trace records reveal that eight of the firearms sold during this transaction were purchased by the Individual A and B partnership. Those eight firearms were identified as the following: (1) Springfield Arms, model XD-9, 9 mm pistol, serial number XD160053; (2) Ruger, model SR9C, 9 mm pistol, serial number 332-58107; (3) Ruger, model SR9C, 9 mm pistol, serial number 332-53874; (4) FNH, model FNP-9, 9 mm pistol, serial number 61BNM02497; (5) Ruger, model SR9C, 9 mm pistol, serial number 33257934; (6) Kareen, model MKIII, 9 mm pistol, serial number 96JO1431; (7) Beretta, model 84F, 9 mm pistol, serial number E08736Y; and (8) Kel-Tec, model P32, .32 caliber pistol, serial number CWK00.

21. A review of the cell site information for LEWISBEY Phone 1 revealed that on April 23, 2012, at 5:06 a.m. LEWISBEY's telephone again traveled from Chicago, Illinois to Indianapolis, Indiana. Cell site information revealed that LEWISBEY'S phone was present in Indianapolis around 7:57 a.m. and was back in the area of the Langley residence at 2:09p.m., around the time that Tanksley called the CS to complete the fifth gun sale.

**Toll Records**

22. A review of the phone records for Tanksley and LEWISBEY Phone 2 indicates both Tanksley and LEWISBEY in contact with an unknown telephone number xxx-xx-4690 throughout the two day period on April 22 and April 23 when the five gun sales occurred. Tanksley's toll records reveals a total of twenty-seven calls to/from the xxx-xx-4690 number on April 22 and thirty-five calls on April 23. The records for LEWISBEY Phone 2 indicate a total of nine calls with the xxx-xx-4690 number on April 22 and twenty calls

on April 23. There are five calls on April 22 and eight calls on April 23 between LEWISBEY phone 1 and xxx-xx-4690 between 4:30a.m. and 5:30a.m. which is around the time the LEWISBEY phone left Chicago and headed to Indianapolis.

**Indiana Gun Sales**

23. Agents conducted traces of the forty-three firearms that were purchased by the CS on April 22, 2012 and April 23, 2012. Of the forty-three firearms that were purchased, twenty-three were originally purchased in the State of Indiana. As noted above, thirteen of the firearms purchased by the CS were determined to have been previously purchased by the Individual A and Individual B partnership. As a result, agents traveled to Indianapolis, Indiana to interview Individual A and Individual B. On May 31, 2012, Agents interviewed Individual A. Individual A told agents that he (Individual A) and Individual B acquired firearms and sold those firearms at the Indianapolis 1500 Gun and Knife Show, as well as through private sales outside the gun show. Individual A explained that he and Individual B purchased firearms for the sole purpose of reselling the firearms.

24. Individual A described meeting an individual, who identified himself as "Big Dave", on or about March 18, 2012 at the Indianapolis 1500 Gun and Knife Show. Individual A stated that he (Individual A) sold "Big Dave" firearms and recorded six (6) of the firearms "Big Dave" purchased on a sales receipt. Individual A explained that when he sold the firearms to "Big Dave" he asked for and received an Indiana identification card. The license included the name David LEWISBEY with an address in Crown Point, Indiana. Individual A confirmed that LEWISBEY was the individual depicted in the

Indiana identification card photograph. Individual A noted the name and address on the identification card onto a multi-copy receipt. Agents acquired a copy of the receipt.

25. Through a check with Indiana Secretary of State office, Agents verified that LEWISBEY did in fact have a valid Indiana identification card. The Indiana identification number was xxxx-xx-4238 and listed the name David James LEWISBEY, of Crown Point, Indiana. Agents confirmed that the photograph depicted in the Indiana driver's license matched the LEWISBEY identified as a suspect in this investigation.

26. Individual A stated that after the March 2012 gun show, Individual A met with LEWISBEY on at least three additional occasions, the last meeting occurring in late April, and sold him approximately thirty additional firearms. These additional sales took place in parking lots in Indianapolis. At each meeting, LEWISBEY paid for the firearms in cash. In total, Individual A estimated that LEWISBEY purchased approximately $13,000 worth of firearms from him between March and April 2012.

27. On May 31, 2012, agents interviewed Individual C, who is Individual A's son. Individual C informed agents that he assisted his father in selling firearms at the Indianapolis gun shows. Individual C identified a photograph of LEWISBEY in a six-person photographic lineup as an individual who purchased guns from his father in early 2012. According to Individual C, a few weeks after LEWISBEY bought guns from his father at the March 2012 gun show, LEWISBEY purchased an additional fifteen to twenty firearms from his father (Individual A) at a McDonald's restaurant on 38th Street in Indianapolis, Indiana. Individual C also recalled a third transaction where LEWISBEY met with his father (Individual) A to purchase another ten to fifteen firearms at the McDonald's on 28th Street in Indianapolis, Indiana.

28. Agents also interviewed Individual B. Individual B explained that he sold firearms at gun shows in Indiana with Individual A. Individual B told agents that in total he and Individual A sold LEWISBEY approximately thirty firearms in total during March and April 2012. Individual B reviewed ATF Firearm Trace Summaries and Multiple Sale Purchases provided to him by the Agents and identified four firearms he remembered selling to LEWISBEY. One of those firearms, the F.N. model Five Seven, 5.7x28 caliber pistol, serial number 386229544, was the firearm that Tanksley sold to the CS at the second gun deal detailed above in paragraph 12.

29. Individual A stated that he last spoke to LEWISBEY on May 30, 2012. Individual A stated that LEWISEBY called him from a cell phone number identified as 832-517-3634 ("LEWISBEY Phone 3") and asked if Individual A had any new guns in. Individual A told LEWISBEY that ATF was looking into some of the firearms Individual A sold to LEWISBEY. According to Individual A, LEWISBEY told him that he (LEWISBEY) sold two of the firearms to two Indiana residents and still had the rest of the guns.

30. On June 1, 2012, LEWISBEY sent a text message to Individual A stating "Just call when you can." After receiving the text message from LEWISBEY, Individual A contacted agents to advise them of the contact with LEWISBEY. Agents arranged for Individual A to place a monitored and recorded telephone call to LEWISBEY. Individual A called LEWISBEY. During the call LEWISBEY inquired about the ATF inquiry and advised Individual A that he (LEWISBEY) would be coming to Indianapolis to purchase additional firearms in a few weeks. Following the instructions of the ATF, Individual A downplayed the ATF inquiry so as not to raise LEWISBEY'S suspicions.

31. Agents obtained subscriber and toll records for LEWISBEY's telephone, pursuant to subpoena served on AT&T. A review of these phone records indicate LEWISBEY had telephonic contact with a cellular telephone utilized by Individual A a total of 26 times between the dates of April 22nd, 2012 and April 23rd, 2012. LEWISBEY's phone contact with Individual A phone is consistent with times preceding the CS purchase of firearms from Tanksley on April 22 and 23.

32. A review of the ATF federal licensing system database revealed that David LEWISBEY was not a licensed firearm dealer at times material to this complaint.

## CONCLUSION

33. Based upon the above information, there is probable cause to believe that on dates in April 2012, David LEWISBEY, not being a licensed importer, manufacturer, or dealer, willfully engaged in the business of dealing in firearms, and in the course of such business, transported, and received firearms in interstate commerce, in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 2.

FURTHER AFFIANT SAYETH NOT

_____
RAMIRO MONTES
Task Force Officer, Bureau of Alcohol,
Tobacco, Firearms & Explosives

SUBSCRIBED AND SWORN
to before me on this 19th day of December, 2012.

_____
Sidney Schenkier
United States Magistrate Judge

13